UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-81525-CIV-MARRA/JOHNSON


SHANTA LESTER,

      Plaintiff,

vs.

"B"ING THE BEST, INC., a Florida corporation,
d/b/a McDONALD'S RESTAURANT,

      Defendant.

_____/

**OPINION AND ORDER**

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment.

(DE 14).  The motion is fully briefed and ripe for review.  The Court has carefully considered the

briefing and is otherwise fully advised in the premises.

**I.**    **Background**

The material facts, culled from affidavits, exhibits, depositions, and reasonably inferred

therefrom in the light most favorable for the Plaintiff, are undisputed.

On June 19, 2009, Plaintiff Shanta Lester, an African-American woman, went to

Defendant "B"ING the Best's McDonald's Restaurant franchise ("McDonald's") for lunch.

(Dep. of S. Lester at 6, Ex. C, attached to DE 14.)  Plaintiff was accompanied by her mother and

her mother's friend.  (*Id.* at 6-7.)  At the register counter Plaintiff was greeted by McDonald's

employee Abdul Burrows, an African American man, who took Plaintiff's order.  (*Id.* at 13).

Plaintiff ordered a two-cheeseburger "combo" meal, which comes with french fries and a soda.

(*Id.* at 24.)  Plaintiff placed her order "to-go," i.e., packaged in a bag to be carried out of the

restaurant and eaten elsewhere.  (*Id.* at 26-27.)  Plaintiff specially ordered her cheeseburgers

without onions or pickles.  (*Id.* at 24-25).  Plaintiff then paid Burrows for her meal.  (*Id.* at 24.)

When the order was ready, another McDonald's employee handed the two-cheeseburger meal to

Plaintiff, packaged in a bag to-go.  (*Id.* at 26.)

Upon receiving her food, Plaintiff checked the bag to confirm her order was correct.  (*Id.*

at 27, 30.)  Plaintiff's two cheeseburgers were in good order—no onions or pickles.  (*Id.* at 26,

30.).  The french fries, however, were not hot.  (*Id.* at 27, 30.)  Plaintiff then asked Burrows for

"fresh" replacement french fries.  (*Id.*)  Burrows obliged Plaintiff and turned to get new french

fries, in accordance with store policy.  (*Id.* at 27; Dep. of G. Hughes, at 13, Ex. 7, attached to DE

18.)

Before Burrows returned to Plaintiff with the new french fries, the manager, Gerald

Hughes, a Caucasian man, stopped him and asked what he was doing.  (Dep. of S. Lester at 27-

29, 45, Ex. C, attached to DE 14.)  Burrows explained that he was replacing Plaintiff's french

fries because her original order was not fresh.  (*Id.* at 29.)  Hughes then turned to Plaintiff and

told her that she would have to pay for a new order of french fries.  (*Id.*; Dep. of G. Hughes, at

36-37, Ex. 7, attached to DE 18.)  Plaintiff refused, explaining that she already paid for an order

of french fries.  (Dep. of S. Lester at 29, 45, Ex. C, attached to DE 14; Dep. of G. Hughes, at 37,

Ex. 7, attached to DE 18.)  Hughes then allegedly called Plaintiff a "black bitch" and exclaimed,

"I'm tired of these damn niggers bringing their food back and don't want to pay for it." [1]  (Dep. of S. Lester at 36-37, Ex. C, attached to DE 14).

During this exchange between Hughes and Plaintiff, the other McDonald's employee, Burrows, exchanged Plaintiff's original french fries for new ones and delivered them to Plaintiff. (*Id.* at 45; Dep. of A. Burrows at 21, Ex. 9, attached to DE 18.)  Plaintiff tasted a french fry from the new batch and confirmed the new order was fresh and hot.  (Dep. of S. Lester at 62-63, Ex. C, attached to DE 14.)  Plaintiff did not pay for these new french fries.  (*Id.* at 46-47; Dep. of G. Hughes, at 37, Ex. 7, attached to DE 18.)

Having received her complete, fresh two-cheeseburger meal, Plaintiff walked to the exit to leave the McDonald's, whereupon Hughes allegedly called Plaintiff a "black bitch" for the second time.  (Dep. of S. Lester at 38, Ex. C, attached to DE 14.)  Plaintiff then left the McDonald's and has not returned since.  (*Id.* at 47.)

On October 16, 2009, Plaintiff initiated this lawsuit, asserting racial-discrimination claims against "B"ING the Best, Inc. d/b/a McDonald's Restaurant under 42 U.S.C. § 1981 and 42 U.S.C. § 2000a.  Defendant now moves for summary judgment, arguing that (1) there is no evidence that Plaintiff's right to make and enforce contracts under Section 1981 was impaired, and (2) there is no evidence that Plaintiff was denied a public accommodation under Section 2000a.

---

[1] Defendant concedes for the purposes of this motion only that Plaintiff's testimony on this point is undisputed.  Defendant otherwise denies that its manager, Hughes, ever used any racially offensive language towards Plaintiff.  Def.'s Mot. at 4 n.1.  Hughes himself also denies using racially charged language towards Plaintiff.  (Dep. of G. Hughes, at 27, Ex. 8, attached to DE 18.)

## II.   **Summary Judgment Standard**

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must show the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). According to the plain language of Rule 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

4

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249-50.

**III.   Discussion**

    A.   Section 1981

Section 1981 provides, in relevant part: "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  The statute defines the term "make and enforce contracts" as "includ[ing] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  *Id.* at § 1981(b).  The elements of a cause of action under Section 1981 are "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Kinnon v. Arcoub, Gopman & Assoc., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (internal quotation marks omitted).

Here, there is no dispute as to the first two elements.  Plaintiff is an African-American and as such is a member of a racial minority.  *Id.*  Additionally, Plaintiff has presented evidence, which Defendant concedes is undisputed for the purpose of this motion, that Defendant's

employee, Hughes, referred to her "using the highly offensive racial slur 'nigger,' which, if true, constitutes direct evidence of discriminatory intent." *Id.*; *see also Green v. Dillard's, Inc.*, 483 F.3d 533, 540 (8th Cir. 2007) (holding that "calling customers 'niggers' is direct evidence of discrimination" under Section 1981); *Brooks v. Collis Foods, Inc.*, 365 F. Supp. 2d 1342, 1359 (N.D. Ga. 2005) (recognizing, under Section 1981, "the level of racial animus" present when individuals are "subjected to racial slurs, expletives or name-calling").

The only dispute concerns the third element, i.e., whether Defendant's discrimination thwarted Plaintiff's right to contract under Section 1981. Defendant argues that "Plaintiff's rights were not abridged under Section 1981" because "Plaintiff was not prevented from purchasing her food." Def.'s Mot. at 4. That is, because Plaintiff paid for a two-cheeseburger meal and received a two-cheeseburger meal, Defendant argues that her contract was fulfilled and there can be no claim under Section 1981, irrespective of any racial epithets uttered during the ordering process. Defendant relies on the line of Section 1981 cases in the retail context that holds that plaintiffs must be *actually prevented* from making a purchase to fall under Section 1981. *See, e.g.*, *Pena v. Fred's Stores of Tenn., Inc.*, No. 09-209, 2009 WL 5218027, at *3 (N.D. Fla. Dec. 31, 2009) ("'Virtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase.'") (quoting *Rogers v. Elliott*, 135 F. Supp. 2d 1312, 1315 (N.D. Ga. 2001)).

Plaintiff argues, however, that the context here sets this case apart from cases involving the retail purchase of goods. Specifically, Plaintiff argues that because this transaction occurred in a restaurant, the contract included more than just the food ordered, such as "being served in an

6

atmosphere which a reasonable person would expect in the chosen place." *Charity v. Denny's, Inc.*, No. 98-0554, 1999 WL 544687, at * 3 (E.D. La. July 26, 1999) (quoted in Pl.'s Mot. at 8). Thus, Plaintiff argues, in the restaurant context, receiving one's complete order does not preclude a Section 1981 claim.  For this proposition, Plaintiff relies on a statement in the Eleventh Circuit's *Kinnon* decision:

> In *Arguello* [*v. Conoco, Inc.*, 330 F.3d 355, 360-61 (5th Cir. 2003)], the court observed that in cases arising from discriminatory service in restaurants, some courts have permitted § 1981 actions based on activity that occurred after the completion of a transaction. . . . As the *Arguello* court noted, "dining at a restaurant generally involves a contractual relationship that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased."

*Kinnon*, 490 F.3d at 893 n.3.  Plaintiff also relies on two district court decisions, noted in *Kinnon* for the same principle.  *See Charity*, 1999 WL 544687, at *3, *5 ("Dining in a restaurant includes being served in an atmosphere which a reasonable person would expect in the chosen place. . . . This Court concludes that being admitted into a restaurant and ultimately being served does not preclude bringing a § 1981 claim."); *McCaleb v. Pizza Hut of Am., Inc.*, 28 F. Supp. 2d 1043, 1047-48 (N.D. Ill. 1998) (holding that under § 1981 defendant-restaurant "failed to provide plaintiffs the full benefits of the contract in that they failed to provide them with the proper utensils with which to eat their pizza and created a disturbing atmosphere in which to eat. . . . [And], defendant interfered with the full enjoyment of the contract by driving plaintiffs out before they had completed eating.").

The context here falls somewhere between the typical retail transaction and typical restaurant transaction: this was a fast-food restaurant.  One fact, however, removes this case from the restaurant context and places it closer to a retail transaction for any other good: Plaintiff

placed her food order "to-go."  Because the order was "to-go", neither Plaintiff nor Defendant intended to contract for extended dining services.  The agreement included only an exchange of Plaintiff's money for a two-cheeseburger meal, and perhaps any accoutrements that typically accompany a fast-food order, such as napkins, straws, or condiments.

The Eleventh Circuit's reasoning in *Kinnon* is applicable here.  There, as Plaintiff points out, the court noted that some courts have permitted Section 1981 claims in the restaurant context based on discriminatory conduct *after* the completion of a transaction.  *Kinnon*, 490 F.3d at 893 n.3.  But, without adopting such a rule for the Eleventh Circuit, the court found that its case—a contract for pizza delivery—was distinguishable from the restaurant context because "unlike the restaurant cases . . . [the plaintiff's] contract involved the delivery of food, rather than the consumption of food in a restaurant." *Id.*  Thus, because the food transaction did not involve "dining at a restaurant," the court found that the "contract for food delivery is analogous to a retail transaction for the purchase of any other good." *Id.*

Like, *Kinnon*, the transaction here did not involve the consumption of food in a restaurant.  Rather, Plaintiff placed a "to-go" order, and therefore contracted only for the food itself, which was to be taken outside of the McDonald's for consumption.  Thus, like *Kinnon*, the Court finds that this contract for a "to-go" order from a fast-food restaurant is analogous to a retail transaction for the purchase of any other good.  Accordingly, the Court analyzes Plaintiff's Section 1981 claim under the retail-context case law.[2]

---

[2] That Plaintiff's order was "to-go" also distinguishes this case from the two restaurant-context district-court cases upon which Plaintiff relies, *Charity*, 1999 WL 544687, and *McCaleb*, 28 F. Supp. 2d 1043, both of which involved plaintiffs who dined-in at the defendants' restaurants.

"Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process.  Rather, in the retail context, the plaintiff must demonstrate the loss of an actual contract interest."  *Kinnon*, 490 F.3d at 892 (internal quotation marks omitted).  Thus, in the retail context, where the plaintiff completes his or her transaction and receives his or her entire order, the plaintiff's right to contract is not abridged and there is no claim under Section 1981.  *See, e.g.*, *Pena*, 2009 WL 5218027, at *3 ("'Virtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase.'") (quoting *Rogers*, 135 F. Supp. 2d at 1315); *see also Garrett v. Tandy Corp.*, 295 F.3d 94, 100-01 (1st Cir. 2002) ("[F]or a suit under section 1981, a retail customer must allege that he was actually denied the ability either to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship . . . ."); *Morris v. Office Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996) (holding that the plaintiffs cannot state a § 1981 claim because "[t]hey cannot point to specific facts showing that Office Max deprived them of . . . the right to make and enforce a contract. They were denied neither admittance nor service, nor were they asked to leave the store."); *Pena*, 2009 WL 5218027, at *3 ("Because it is undisputed that plaintiffs in this case were not thwarted or otherwise prevented from shopping and purchasing all the items they selected, their Section 1981 claim fails as a matter of law."); *Robertson v. Burger King, Inc.*, 848 F. Supp. 78, 80-81 (E.D. La. 1994) (holding that alleged racial discrimination during the ordering process at a fast-food restaurant failed to state a claim under § 1981 because the plaintiff's order, while allegedly delayed due to his race, was ultimately fulfilled).

Here, the record establishes that Plaintiff was not "actually denied the ability either to make, perform, enforce, modify, or terminate a contract on account of [Defendant's] conduct." *Kinnon*, 490 F.3d at 892 (internal quotation marks omitted).  Plaintiff ordered a two-cheeseburger meal from a McDonald's employee, Burrows.  It is undisputed that, in exchange for her payment, Burrows delivered to Plaintiff a two-cheeseburger meal.  It is also undisputed that Plaintiff received french fries with her initial order and that upon her request for new, fresh fries, she received those as well.  Plaintiff's contract was therefore fulfilled and her right to "make and enforce contracts" under Section 1981 was not thwarted.

The fact that another McDonald's employee, Hughes, shouted racial epithets towards Plaintiff while Burrows fulfilled her order cannot support a Section 1981 claim.  Notwithstanding Hughes's alleged comments, Plaintiff ultimately received her entire purchase, exactly as ordered, and she was therefore not denied her statutory right to contract.  *See Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1118 (10th Cir. 2001) ("We are aligned with all the courts that have addressed the issue that there must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping."); *Arguello*, 330 F.3d at 358-59 ("[A] § 1981 claim must allege that the plaintiff was *actually prevented, and not merely deterred*, from making a purchase or receiving service after attempting to do so.") (emphasis in original) (internal quotation marks omitted); *see also Kinnon*, 490 F.3d at 892 (citing with approval the holdings from *Hampton* and *Arguello*).  Egregious as the comments alleged here may have been, they did not prevent the formation of a contract, alter the substantive terms on which the contract was made, nor thwart the completion of the transaction.  *Cf. Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479 (2006) ("[N]othing in the text of § 1981 suggests that it was

10

meant to provide an omnibus remedy for *all* racial injustice.  If so, it would not have been limited to situations involving contracts.") (emphasis in original).  Thus, because Plaintiff's "exercise of her contract rights was not 'in some way thwarted' by [Defendant], she cannot succeed on her § 1981 claim."  *Kinnon*, 490 F.3d at 892 (quoting *Arguello*, 330 F.3d at 359).

> B.   Section 2000a

Plaintiff also asserts a claim under 42 U.S.C. § 2000a, which provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."  Under Section 2000a, a plaintiff is limited to injunctive relief only.  *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 401 (1968); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997); *Jackson v. ABC Liquors*, 983 F. Supp. 1388, 1393 (M.D. Fla. 1997).  To claim injunctive relief, a plaintiff must show a "'real or immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury.'"  *Jackson*, 130 F.3d at 1007 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Here, there is no evidence in the record, or even any allegation in the complaint, that Plaintiff is subject to an immediate threat of irreparable harm.  Plaintiff has made no showing that she is subject to any future harm at all.  In fact, the record shows that the one employee responsible for the alleged discriminatory conduct no longer works at McDonald's.  (Dep. of G. Hughes, at 29, Ex. 8, attached to DE 18.)  And Plaintiff does not allege that McDonald's itself

11

maintains any discriminatory policy or procedures.  Accordingly, Plaintiff's Section 2000a claim fails.[3]

**IV.**      **Conclusion**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that  Defendant's Motion for Summary Judgment (DE 14) is **GRANTED**.  The Court will separately issue judgment for Defendant.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida this 29th day of November, 2010.

_____
KENNETH A. MARRA
United States District Judge

Copies to:
Counsel of record

---

[3] While neither party briefed Section 2000a's injunctive-relief limitation as a ground for summary judgment, both parties agreed that the Court's ruling on Plaintiff's Section 1981 claim—here, summary judgment in favor of Defendant—also applies to the Section 2000a claim, based upon the similar inquiries under each statute.  *See* Def.'s Mot. at 12; Pl.'s Mot. at 19.